# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI ANN GONZALEZ, individually and on behalf of others similarly situated, a<br><br>                Plaintiff,<br><br>      v.<br><br>COMENITY CAPITAL BANK, DOES 1-30,<br><br>               Defendants. | CASE NO. 1:19-CV-00342-AWI-EPG<br><br>**ORDER ON PLAINTIFF'S MOTION TO REMAND**<br><br>(Doc. No. 9) |

## INTRODUCTION

On January 25, 2019, Plaintiff Lori Ann Gonzalez ("Gonzalez") filed a putative class action in Fresno County Superior Court alleging that Defendant Comenity Capital Bank ("Comenity Capital") routinely violates California statutes relating to identity theft in connection with credit cards branded for "Blair" and "Overstock.com." Comenity Capital removed the action to this Court on March 14, 2019 and Gonzalez sought remand. For the reasons set forth below, Gonzalez's motion to remand will be denied.

## BACKGROUND

The Complaint, as filed in Fresno Superior Court, alleges as follows:[1]

---

[1] The Court did not have cause to consider the materials referenced in Comenity's request for judicial notice (Doc. No. 15-2) or the materials referenced in Gonzalez's requests for judicial notice (Doc. No. 11 & Doc. No. 18) in deciding this motion. The parties' requests for judicial notice are therefore denied as moot.

In 2017 or 2018, Gonzalez began receiving telephone calls from Comenity Capital to collect on two credit card accounts issued by Comenity Capital, one branded for a retailer called "Overstock.com" and the other branded for a retailer called "Blair." Doc. No. 1, Ex. A (Complaint) ¶¶ 13 & 18. In those telephone calls, Gonzalez verbally informed Comenity Capital that she had not opened either account and that she was a victim of identity theft, but Comenity Capital did not inform Gonzalez that claims of identity theft must be in writing. Id., Ex. A ¶¶ 20-21.

On or about March 16, 2018, Comenity Capital sent Gonzalez a form letter "seeking to collect on the alleged Overstock.com credit card debt" and "threatening to bring 'Legal action' if Plaintiff did not '[m]ake a payment online or by phone.'" Doc. No. 1, Ex. A ¶ 23. According to Gonzalez, the representations in this form letter were "false, deceptive, and misleading" because Comenity Capital "had no intention of bringing any legal action against [Gonzalez] for the purported Overstock.com debt." Id., Ex. A ¶¶ 24-26. Moreover, the Complaint alleges that Comenity Capital "maintain[s] a pattern and practice of automatically sending [threatening collection letters] to alleged delinquent debtors" without first determining whether the debts in question satisfy its criteria for initiating legal action. Id., Ex. A ¶¶ 30-31.

In August 2018, Gonzalez sent a letter notifying Comenity Capital that she had been a victim of identity theft in connection with the Overstock.com account and a letter notifying Comenity Capital that she had been a victim of identity theft in connection with the Blair account, but Comenity Capital "did not cease collection activities" as to either account. Doc. No. 1, Ex. A ¶¶ 32-39.

In December 2018, Gonzalez sent additional letters to Comenity Capital seeking documents and information relating to the accounts, and again stating that she was a victim of identity theft. Doc. No. 1, Ex. A ¶¶ 40-41. Comenity Capital did not provide the information or documents requested as to either account, and the Complaint alleges that Comenity Capital "maintain[s] a pattern and practice" of failing to respond to requests involving identity theft in the manner required under Section 530.8 of the California Penal Code. Id., Ex. A ¶¶ 45-47. Moreover, the Complaint alleges that Gonzalez "suffered actual damage" as a result of Comenity

Capital's conduct, that Comenity Capital's "practices … present a continuing threat" to the public "unless enjoined or restrained," and that Comenity Capital's conduct as to "empty threats of legal action," "oral claims of identity theft," "written claims of identity theft," and "requests for information and/or documents" "was and is persistent, frequent, willful and knowing." Id., Ex. A ¶¶ 48-49, 65, 74, 77 & 80.

Based on these factual allegations, Gonzalez alleges seven causes of action against Comenity Capital: (i) "Violations of California Civil Code, § 1788.13, subd. (j)"; (ii) "Violations of California Civil Code, § 1788.17"; (iii) "Violations of California Civil Code, § 1788.18's Requirement to Notify Oral Identity Theft Claimants that the Claim Must Be in Writing"; (iv) "Violations of California Civil Code, § 1788.18's Requirements for Responses to Written Identity Theft Claims"; (v) "Violations of California Penal Code, § 530.8, subd. (a)"; (vi) "Violations of California Business & Professions Code, §§ 17200 et seq."; and (vii) "Action to Establish Identity Theft under California Civil Code, § 1798.93."[2] Doc. No. 1, Ex. A, pp. 10-15.

Gonzalez brings the first six causes of action individually and on behalf of putative classes, and brings the seventh cause of action solely as an individual claim. Doc. No. 1, Ex. A, pp. 10-15. As to the first four causes of action, Gonzalez seeks actual damages and statutory damages, as well as attorneys' fees and costs. Id., Ex. A, Prayer for Relief ¶¶ 1-4. As to the Fifth Cause of Action, Gonzalez seeks actual damages and "a penalty as authorized by Penal Code section 530.8, subdivision (d)(2)," equitable relief, and attorneys' fees and costs. Id., Ex. A, Prayer for Relief ¶ 5. As to the Sixth Cause of Action, Gonzalez seeks restitution and equitable relief, as well as attorneys' fees and costs. Id., Ex. A, Prayer for Relief ¶ 6. And on the Seventh Cause of Action, Gonzalez seeks damages and "a civil penalty," as well as attorneys' fees and costs, along with equitable relief. Id., Ex. A, Prayer for Relief ¶ 7.

On March 14, 2019, Comenity Capital removed the case to this forum based on diversity

---

[2] Sections 1788.13, 1788.17 and 1788.18 of the Civil Code are provisions of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") and Section 1798.93 of the Civil Code is a provision of the California Identity Theft Act ("CITA"). See Cutler ex rel. Jay v. Sallie Mae, Inc., 2015 WL 1909482, *2 (C.D. Cal. Apr. 24, 2015). The causes of action under Section 1788.13, 1788.17 and 1788.18 of the Civil Code are sometimes referred to herein as the "Rosenthal Act claims," and the cause of action under Section 1798.93 of the Civil Code is sometimes referred to as the "CITA claim."

of citizenship pursuant to 28 U.S.C. § 1441(b). Doc. No. 1 ¶ 6. The notice of removal asserts that Gonzalez and Comenity Capital are citizens of different states and that "the total amount of individual relief to which [Gonzalez] claims she is entitled if she prevails in this action exceeds $75,000." Id. ¶¶ 2-4. Gonzalez now seeks remand.[3]

## PLAINTIFF'S MOTION TO REMAND

The notice of removal asserts that Comenity Capital and Gonzalez are citizens of different states and that Gonzalez stands to recover "an amount greater than $75,000" if she prevails on all of her claims, Doc. No. 1 ¶¶ 2, 3 & 17 – factoring in penalties under the Rosenthal Act, the CITA claim and Section 530.8 of the California Penal Code, as well as attorneys' fees. Id. ¶ 9, 13, 15 & 16.

In moving for remand, Gonzalez does not dispute that she and Comenity Capital are citizens of different states but contends that the Court lacks subject matter jurisdiction over this action – and that remand is required under 28 U.S.C. § 1447(c) – because Comenity Capital cannot meet its burden to show that the amount in controversy exceeds the $75,000 jurisdictional threshold set forth in 28 U.S.C. § 1332(a). See Doc. No. 10 at 7:15-17. Specifically, Gonzalez argues that using the maximum penalty under the Rosenthal Act and the maximum penalty under the CITA to calculate the amount in controversy is improper because the award amounts are discretionary and the Complaint does not expressly seek – or allege facts to support – the maximum award under either statute. Doc. No. 10, Part 3.B.(1). Gonzalez also takes the position that it is speculative to assume that she would recover a separate civil penalty on each of her four causes of action under the Rosenthal Act, since past cases have capped the penalty "at $1,000 per plaintiff, per lawsuit, not per violation." Id., Part 3.B.(2). Further, Gonzalez asserts that it is speculative and unreasonable to assume that the post-removal portion of penalties under Section 530.8 of the California Penal Code will continue to accrue through trial. Doc. No. 12, Part

---

[3] On January 29, 2019, Gonzalez filed a putative class action in Fresno Superior Court against Comenity Bank alleging facts and causes of action similar to the facts and causes of action in this case in connection with a credit card branded for a clothing retailer called "The Limited." Comenity Bank removed that action to the United States District Court for the Eastern District of California on March 14, 2019, the same day this action was removed. The Court issued an order in this action relating that case to this case. See Doc. No. 7. Gonzalez filed a motion to remand in that action as well.

4

3.B.(3). According to Gonzalez, the Section 530.8 civil penalty will stop accruing (well in advance of trial) once Comenity Capital fulfills its obligation to produce documents relating to the account at issue in discovery. Id., Part 3.B.(3)(b). Finally, Gonzalez contends that Comenity Capital's estimate of attorneys' fees cannot be credited because it overstates the incremental costs associated with litigating Gonzalez's individual CITA claim and because the underlying methodology is unsound. Doc. No. 16, Part 2.D.

*Comenity Capital's Opposition*

Comenity Capital argues that using the maximum penalty under the Rosenthal Act[4] and the maximum penalty under the CITA to calculate the amount in controversy in this action is proper because recent Ninth Circuit decisions make it clear that the amount in controversy in a case includes all relief a court may grant on a complaint if the plaintiff prevails on all claims, Doc. No. 15 at 1:6-13, and because Gonzalez has not stipulated that she is seeking less than the maximum penalty under either statute. Id. at 1:20. Further, Comenity Capital contends that it is proper to assume the penalty under Section 530.8 of the California Penal Code will continue to accrue through completion of the trial – at the statutory rate of $100 per day for each of the two credit card accounts at issue – because Gonzalez "refuses to stipulate that she is not seeking post-removal penalties" and because the amount in controversy is to be estimated at the time of removal, without regard to future events (such as settlement or the production of documents in discovery) that might reduce the amount in controversy after removal. Id. at 12:5-13:17. Finally, Comenity Capital argues that at a rate of $300 per hour, Gonzalez could recover attorneys' fees in the amount of at least $23,229 on her individual CITA claim alone. Id., Part III.D.

*Legal Standard*

Under 28 U.S.C. § 1441, "[a] defendant generally may remove an action filed in state court if a federal district court would have had original jurisdiction over the action." Chavez v.

---

[4] For purposes of this motion, Comenity Capital appears to assume a single award under the Rosenthal Act for the entire lawsuit, as opposed to a separate award for each of the credit card accounts at issue and/or each of Gonzalez's causes of action under the Rosenthal Act. See Doc. No. 15 at 1:14-23. Gonzalez herself similarly takes the position that the Court should assume a maximum of one penalty under the Rosenthal Act in this lawsuit for purposes of calculating the amount in controversy. Doc. No. 10, Part 3.B.(2). The Court therefore assumes that Gonzalez can recover only one penalty under the Rosenthal Act for purposes of the amount-in-controversy analysis, but expresses no view as to the validity of that assumption and notes that it does not affect the decision on this motion.

5

JPMorgan Chase & Co, 888 F.3d 413, 415-16 (9th Cir. 2018) (citing 28 U.S.C. § 1441(a) and Gonzales v. CarMax Auto Superstores, LLC, 840 F.3d 644, 648 (9th Cir. 2016)). The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted).

There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, which gives federal courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States"; and (2) diversity jurisdiction under 28 U.S.C. § 1332, which gives federal courts original jurisdiction where the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs" and there is "complete diversity among the parties." See Chavez, 888 F.3d at 415 (citing Corral v. Select Portfolio Servicing, Inc., 878 F.3d 770, 774 (9th Cir. 2017)). Where a putative class action is removed on the basis of diversity jurisdiction under 28 U.S.C. § 1332, courts examine "only the claims of named class plaintiffs for purposes of the amount-in-controversy requirement."[5] Gibson v. Chrysler Corp., 261 F.3d 927, 941 (9th Cir. 2001), holding modified by Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005) (citing Supreme Tribe of Ben–Hur v. Cauble, 255 U.S. 356, 366–67 (1921)); see also Pruell v. Caritas Christi, 645 F.3d 81, 83 (1st Cir. 2011) ("The usual rule in class actions is that to establish subject matter jurisdiction one looks only to the named plaintiffs and their claims.")).

The Ninth Circuit has "defined the amount in controversy as the 'amount at stake in the underlying litigation.'" Gonzales, 840 F.3d at 648–49 (quoting Theis Research, Inc. v. Brown & Bain, 400 F.3d 659, 662 (9th Cir. 2005)); see also Chavez, 888 F.3d at 417 (explaining that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them"). It "is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 400 (9th Cir. 2010) (citation omitted). "In that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover."

---

[5] Comenity Capital does not base removal on the Class Action Fairness Act ("CAFA").

6

Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019) (citing Chavez, 888 F.3d at 417) (emphasis original).

"Where … it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." Fritsch v. Swift Transportation Co. of Arizona, LLC, 899 F.3d 785, 793 (9th Cir. 2018) (quoting Urbino v. Orkin Servs. of Cal., Inc., 726 F.3d 1118, 1121–22 (9th Cir. 2013)) (internal quotation marks omitted). "[A] removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages," Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008) (citation and internal quotation marks omitted), but "[c]onclusory allegations as to the amount in controversy are insufficient." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090-1091 (9th Cir. 2003) (citation omitted). "[T]he defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds" the jurisdictional threshold for diversity jurisdiction. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir.1996) (citations omitted).

"In assessing the amount in controversy, [courts] may consider allegations in the complaint and in the notice of removal, as well as summary-judgment-type evidence relevant to the amount in controversy," Chavez, 888 F.3d at 416 (citation omitted), including "supplemental evidence later proffered by the removing defendant, which was not originally included in the removal notice." Korn, 536 F.Supp.2d at 1205 (citing Cohn v. Petsmart, Inc., 281 F.3d 837, 840 n.1 (9th Cir. 2002)).

## **ANALYSIS**

Neither party disputes that the diversity requirement is satisfied in this case, so the only issue for the Court to resolve on this motion is whether it is "more likely than not" that the amount in controversy – in connection with Gonzalez's individual claims – exceeds the jurisdictional threshold of $75,000. See Sanchez, 102 F.3d at 404. In making that determination, the Court considers each aspect of the amount in controversy calculation in turn.

# I. Statutory Penalties Under the Rosenthal Act and the CITA

Two of the statutes at issue in this action – the Rosenthal Act and the CITA – contain provisions that specify maximum penalties. The Rosenthal Act provides for penalties ranging from a minimum of $100 to a maximum of $1,000, see Cal. Civ. Code § 1788.30, subd. (b), while the CITA provides for penalties of up to $30,000. See Cal. Civ. Code § 1798.93, subd. (a)(6).

One of the key points of contention in this motion is whether the maximum penalties available under these statutes should be included in the amount-in-controversy calculation. Gonzalez contends that the statutory maximum penalties should not be included in the amount-in-controversy calculation because the Complaint does not seek – or allege facts justifying – maximum penalties, and because Comenity has failed to meet its burden to show that maximum penalties will be awarded if Gonzalez prevails on her claims. Doc. No. 10, Part 3.B.(1).

Comenity, for its part, contends that it is proper to include maximum penalties in the amount-in-controversy calculation because, whether or not they are ultimately imposed, they are within the scope of relief that could be awarded and are, thus, "at stake" in the litigation. Doc. No. 15, Part III.B. Further, Comenity argues that Gonzalez has not disclaimed maximum penalties in this case, and that the facts alleged in the Complaint could justify maximum penalties under both of the statutes in question for Gonzalez's individual claims. Id.

The use of maximum statutory penalties in jurisdictional amount-in-controversy calculations was addressed by this district in *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199 (E.D. Cal. 2008). *Korn* was a putative class action involving alleged violations of Section 1747.08 of the California Civil Code, which provides for "a civil penalty not to exceed two hundred fifty dollars ($250) for the first violation and one thousand dollars ($1,000) for each subsequent violation." Cal. Civ. Code § 1747.08, subd. (e). Defendant removed the action to federal court under the CAFA and, in seeking remand, plaintiff took the position that the $1,000 maximum penalty set forth in the statute should not be included in the amount in controversy because "the class plaintiffs could be awarded less than the maximum statutory penalty per violation." Id. at 1205. The court rejected that argument on the ground that it "overlook[ed] the critical distinction between the likely recovery per plaintiff and the actual issue before the court,

the amount in controversy in th[e] litigation." Id. at 1205 (citing Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir.2005)). Further, the court found that the maximum penalty was properly included in the amount in controversy because plaintiff alleged that he and every other class member were "entitled to civil penalties in amounts up to one thousand dollars ($1,000) per violation" and had not "stipulat[ed] that he [would] demand less than the maximum civil penalty." Id. at 1205. In short, the court found that "[w]here a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met," id. (citing Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000)), and that plaintiff could not "avoid satisfaction of the amount in controversy by arguing that the class plaintiffs *may* be awarded less than the statutory maximum." Id. at 1206 n.4 (emphasis original).

The finding in *Korn* as to the use of maximum penalties in amount-in-controversy calculations comports with – and is, indeed, compelled by – the findings in recent Ninth Circuit decisions relating to amount-in-controversy calculations, including *Arias*, where the Ninth Circuit found that "the amount in controversy reflects the *maximum* recovery [a] plaintiff could reasonably recover" on a complaint, Arias, 936 F.3d at 927 (emphasis original), and *Chavez*, where the Ninth Circuit found that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them." Chavez, 888 F.3d at 417. The Court therefore finds that the maximum penalty specified in a statute is properly included in a jurisdictional amount-in-controversy calculation where a plaintiff could reasonably recover such penalty. The amounts in controversy as to Gonzalez's claims under the Rosenthal Act and the CITA are evaluated accordingly below.

### a. Rosenthal Act Claims

Gonzalez alleges that Comenity Capital violated Sections 1788.13, 1788.17 and 1788.18 of the California Civil Code through "persistent, frequent, willful and knowing" wrongdoing that included "sending … empty threats of legal action," Doc. No. 1, Ex. A ¶¶ 65, 70; failing to notify Gonzalez and others that "claims of identity theft must be in writing," id., Ex. A ¶ 75; and failing to cease collections upon receipt of written notification of identity theft. Id., Ex. A ¶ 78.

9

Gonzalez further alleges that she received multiple telephone calls from Comenity Capital in connection with the credit card accounts at issue here, id., Ex. A ¶ 18; that Comenity Capital "maintain[s] a pattern and practice of automatically sending [threatening collection letters] to alleged delinquent debtors" without first determining whether the debts in question satisfy its criteria for initiating legal action, id., Ex. A ¶¶ 30-31; that Comenity Capital disregarded her written notifications of identity theft in connection with the accounts at issue here on more than one occasion, id., Ex. A ¶¶ 32-39; and that Comenity Capital's "practices … present a continuing threat" to the public "unless enjoined or restrained." Id., Ex. A ¶ 49. In connection with her Rosenthal Act claims, Gonzalez prays for actual damages, statutory damages, and attorneys' fees and costs. Id., Ex. A, Prayer for Relief ¶¶ 1-4.

As noted above, Section 1788.30, subdivision (b), of the California Civil Code provides that a defendant will be liable for a "penalty" of up to $1,000 for "willfully and knowingly" violating the Rosenthal Act. Cal. Civ. Code § 1788.30, subd. (b). In *Lyon v. Bergstrom Law, Ltd.*, the court awarded a penalty in the amount of $250 in connection with a violation of Section 1788.18 because the defendant "left only a single infringing voicemail without any aggravating circumstances," 2017 WL 2350447, *10 (E.D. Cal. May 31, 2017), and in *Gonzales v. Arrow Fin. Servs.*, LLC, a jury awarded a penalty of $250 for violations of Section 1788.17 to the named plaintiff in a class action involving the collection of unpaid health club dues, where a boilerplate collection letter falsely threatened to submit a negative credit report to a credit reporting agency. 660 F.3d 1055, 1059-60 (9th Cir. 2011). At the other end of the spectrum, the court in *Ortega v. Griggs & Assocs. LLC* awarded the maximum $1,000 penalty on default judgment for violation of Section 1788.17 on allegations that defendant called plaintiff multiple times and falsely represented that she was subject to criminal prosecution for failure to pay her debt, 2012 WL 2913202, *1, *5 (N.D. Cal. July 13, 2012), and in *Washington v. City Title Loan, LLC*, the court imposed the maximum penalty of $1,000 for violation of Section 1788.17 on a mere finding that the plaintiff had "alleged and provided evidence that [the defendant] willfully and knowingly violated [the Rosenthal Act]." 2018 WL 4005447, *7 (C.D. Cal. Feb. 26, 2018).

While awards vary, the allegations in the Complaint (including, for example, the allegation

1 that Comenity contacted Gonzalez on several occasions and engaged in multiple forms of
2 misconduct under the Rosenthal Act) appear sufficient, in light of relevant caselaw, to show that
3 Comenity's conduct was willful and knowing and that Gonzalez "could reasonably recover" the
4 maximum penalty under the Rosenthal Act in this action. See Arias, 936 F.3d at 927. Further,
5 Gonzalez has not disclaimed the maximum penalty or otherwise limited her prayer under the
6 Rosenthal Act, which expressly calls for "statutory damages." [6] See Doc. No. 1, Ex. A, Prayer for
7 Relief ¶¶ 1-4. Therefore, the Court finds that the Complaint puts the maximum penalty under the
8 Rosenthal Act "at stake" in this action, see Chavez, 888 F.3d at 415, 417, and assigns a value of
9 $1,000 to Gonzalez's individual claim under the Rosenthal Act for purposes of the amount-in-
10 controversy calculation. See Morey v. Louis Vuitton N. Am., Inc., 461 F. App'x 642, 643 (9th
11 Cir. 2011).

### b. **CITA Claim**

The CITA provides for:

> A civil penalty, in addition to any other damages, of up to thirty thousand dollars ($30,000) if the victim establishes by clear and convincing evidence all of the following:
>
> (A) That at least 30 days prior to filing an action or within the cross-complaint pursuant to this section, he or she provided written notice to the claimant at the address designated by the claimant for complaints related to credit reporting issues that a situation of identity theft might exist and explaining the basis for that belief.
>
> (B) That the claimant failed to diligently investigate the victim's notification of a possible identity theft.
>
> (C) That the claimant continued to pursue its claim against the victim after the claimant was presented with facts that were later held to entitle the victim to a judgment pursuant to this section.

Cal. Civ. Code § 1798.93, subd. (a)(6).

Gonzalez prays for "declaratory relief, injunctive relief, and such other equitable relief as the Court may deem appropriate; actual damages according to proof; a civil penalty; and attorneys' fees and costs," Doc. No. 1, Ex. A, Prayer for Relief ¶ 7, based on allegations that Gonzalez provided written notice to Comenity Capital that she was "the victim of an identity theft

---

[6] The "penalty" set forth in Section 1788.30, subdivision (b), of the Civil Code is often referred to as "statutory damages." See, e.g., Marseglia v. JP Morgan Chase Bank, 750 F.Supp.2d 1171, 1180 (S.D. Cal. Nov. 12, 2010) (stating that "statutory damages under the Rosenthal Act are limited to $1,000 per plaintiff").

11

crime" with respect to the Overstock.com and Blair accounts, but that Comenity Capital "failed to diligently investigate [her] notification of identity theft and "continued to pursue [its] claim against [her] after being presented with the facts underlying [her] claim of identity theft." Id., Ex. A, ¶¶ 32, 97-100.

Comenity cites a couple of cases in which the $30,000 statutory maximum was awarded to the prevailing plaintiff under the CITA. In *Washington*, the district court awarded the $30,000 statutory maximum penalty on default judgment based on a mere finding that "the FAC has sufficiently alleged a claim under the CITA." 2018 WL 4005447, *3-*4, *7 (C.D. Cal. Feb. 26, 2018). In *Seungtae Kim v. BMW Fin. Servs. NA, LLC*, similarly, the district court found that a jury award of $30,000 was "not excessive" because it "was within the statutory limit." 142 F.Supp.3d 935, 947 (C.D. Cal. 2015), aff'd sub nom. Kim v. BMW Fin. Servs. NA LLC, 702 F.App'x 561 (9th Cir. 2017). Gonzalez, for her part, cites *Heidorn v. BDD Marketing & Management Co., LLC* to show an award of a much smaller amount – just $3,000 – on default judgment. Doc. No. 12 at 11:3-6. That $3,000 award, however, is predicated not on the CITA but on California's Shine the Light Law, California Civil Code § 1798.83,[7] for which $3,000 is, in fact, the *maximum* penalty that can be awarded. Miller v. Hearst Commc'ns Inc., 554 F.App'x 657, 658 (9th Cir. 2014); Cal, Civ. Code §1798.84, subd. (c).

Here again, Gonzalez has prayed without caveat for a penalty under a statute that specifies a maximum penalty while alleging facts that appear, in light of relevant case law, to be sufficient to justify the statutory maximum penalty under the CITA. The Court, therefore, finds that it is proper to include the statutory maximum penalty in the amount-in-controversy calculation. Further, the Court sees no merit in Gonzalez's argument that it is improper to include two CITA penalties in the amount-in-controversy calculation. See Doc. No. 16 at 14:1-8. Gonzalez never states that she will not seek a separate civil penalty for each of the credit card accounts at issue in this action, and the plain language of Section§ 1798.93, subdivision (c), provides for a civil

---

[7] See Heidorn v. BDD Mktg. & Mgmt. Co., LLC, 2013 WL 6571168, *1 (N.D. Cal. Oct. 9, 2013); Heidorn v. BDD Mktg. & Mgmt. Co., LLC, 2013 WL 6571629, *17 (N.D. Cal. Aug. 19, 2013), report and recommendation adopted, 2013 WL 6571168 (N.D. Cal. Oct. 9, 2013) (recommending "an award of $3,000 as a penalty" under "California's Shine the Light Law").

penalty *"as to a particular claim"* – where "claim" refers to an attempt to collect a particular debt. Cal. Civ. Code § 1798.93 (emphasis added). At the time of removal, it appeared Gonzalez could reasonably recover the maximum CITA penalty of $30,000 in connection with the Overstock.com account and the maximum CITA penalty of $30,000 in connection with the Blair account. Thus, the Court assigns a combined value of $60,000 to Gonzalez's claim for penalties under the CITA for purposes of the amount-in-controversy calculation. See Arias, 936 F.3d at 927; Chavez, 888 F.3d at 418.

## II. Statutory Penalty Under Section 530.8 of the California Penal Code

Section 530.8 of the California Penal Code gives victims of identity theft the right to certain information – like transaction records and account applications – relating to accounts opened in their names by unauthorized persons. See Cal. Penal Code § 530.8. Subdivision (a) of Section 530.8 governs requests for such information and provides that the person or entity with which an unauthorized account was opened "shall provide copies of all paper records, records of telephone applications or authorizations, or records of electronic applications or authorizations required by [Section 530.8, subd. (a)], without charge, within 10 business days of receipt of the person's request and submission of the required copy of the police report and identifying information." Cal. Penal Code § 530.8, subd. (a). Subdivision (d)(2) of Section 530.8 provides that, "[i]n addition to any other civil remedy available, the victim may bring a civil action against the entity for damages, injunctive relief or other equitable relief, and a penalty of one hundred dollars ($100) per day of noncompliance, plus reasonable attorneys' fees." Cal. Penal Code § 530.8, subd. (d)(2).

Gonzalez alleges that Comenity has "willfully and knowingly violated Penal Code section 530.8, subdivision (a)," Doc. No. 1, Ex. A ¶ 80, and prays for "actual damages according to proof and a penalty as authorized by Penal Code section 530.8, subdivision (d)(2), to be paid to [Gonzalez] and each Information Request Class member; injunctive relief and such other equitable relief as the Court may deem appropriate and reasonable attorneys' fees and costs." Id., Ex. A, Prayer for Relief ¶ 5.

Comenity Capital contends – and Gonzalez does not dispute – that the penalty under

Section 530.8, subdivision (d)(2) totaled $23,300 for the two credit card accounts at issue in this action at the time of removal. See Doc. No. 15, p. 10 n.16 (reducing Comenity Capital's initial figure of $24,500 by $1,200 per the correction set forth by Gonzalez, Doc. No. 10 at 12:21-26). Thus, there is a minimum of $23,300 in penalties at stake in connection with Gonzalez's claim under Section 530.8 of the California Penal Code, without even considering accruals after the date of removal. Combined with the Court's findings as to the penalties at stake under the Rosenthal Act and the CITA, this brings the total amount in controversy in this action – as to penalties alone – to $84,300.

### III. ACTUAL DAMAGES, EQUITABLE RELIFE & ATTORNEYS' FEES

Gonzalez also seeks actual damages, equitable relief and attorneys' fees in connection with the claims discussed above, as well as equitable relief in connection with her claim under Section 17200, et seq. of the California Business and Professions Code. While quantification as to each is not necessary for purposes of deciding this motion, such costs and recoveries further confirm the Court's finding that the amount in controversy in this action exceeds the $75,000 jurisdictional threshold in 28 U.S.C. § 1332(a). See Fritsch, 899 F.3d at 794 (allowing for inclusion of the future attorneys' fees in amount-in-controversy calculations); Gonzales, 840 F.3d at 648–49 (finding that the "amount at stake" in litigation involves anything other than interest and costs that "entail[s] a payment by the defendant," including compensatory damages and "the cost of complying with an injunction" (citations and internal quotation marks omitted)).

### IV. CONCLUSION

The Court finds that there is $61,000 "at stake" in connection with Gonzalez's claims under the Rosenthal Act and the CITA, and there is no dispute between the parties that at least $23,300 at issue in connection with Gonzalez's claim under Section 530.8 of the Penal Code. Thus, the amount in controversy in this action is at least $84,300, even without counting the post-removal portion of the Section 530.8 penalty, attorneys' fees or Gonzalez's prayers for actual damages and equitable relief. Therefore, the Court properly has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and remand is not warranted.

# **ORDER**

Accordingly, IT IS HEREBY ORDERED that Gonzalez's motion to remand (Doc. No. 9) is DENIED.

IT IS SO ORDERED.

Dated: October 21, 2019

_____
SENIOR DISTRICT JUDGE