# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI ANN GONZALEZ, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COMENITY CAPITAL BANK, DOES 1-30,<br><br>Defendants. | CASE NO. 1:19-CV-00342-AWI-EPG<br><br>**ORDER ON DEFENDANT COMENITY CAPITAL BANK'S MOTION TO COMPEL ARBITRATION**<br><br>(Doc. No. 20) |

## INTRODUCTION

This is a putative class action in which Plaintiff Lori Ann Gonzalez ("Gonzalez") alleges that Defendant Comenity Capital Bank ("Comenity Capital") has violated California statutes relating to identity theft in connection with credit card accounts branded for retailers Blair and Overstock.com (the "Accounts" or, individually, the "Account"). Comenity Capital contends that arbitration agreements apply to Gonzalez's claims as to both Accounts and has brought a motion for an order compelling arbitration pursuant to the terms of those agreements. For the reasons set forth below, the Court will deny Comenity Capital's motion to compel arbitration without prejudice pending a summary determination as to the existence of the arbitration agreements.

## BACKGROUND

This action involves a credit card accounts issued by Comenity Capital and branded for retailers "Blair" and "Overstock.com." See Doc. No. 1, Ex. A (Complaint). Gonzalez contends

that she did not open the Accounts and filed an action against Comenity Capital in Fresno County Superior Court alleging various forms of misconduct on Comenity Capital's part in connection with her claims of identity theft. Id., Ex. A. For example, Gonzalez alleges that Comenity Capital "pursued [her] for a debts she did not owe" on the Accounts; "ignored her when she said the accounts were not hers"; and "ignored her requests for information about the alleged debts, violating California laws for how creditors and debt collector[s] must respond to reports of identity theft." Id., Ex. A ¶ 1. Further, Gonzalez alleges that Comenity Capital failed to notify her that her claims of identity theft with respect to the Accounts "must be in writing," id., Ex. A ¶ 21; failed to provide "information and documents" Gonzalez requested with respect to the Accounts, id., Ex. A ¶ 47; improperly threatened her with legal action to collect debts on the Accounts, id. Ex. A ¶ 64; and "failed to diligently investigate [Gonzalez's] notification of identity theft" with respect to the Accounts. Id., Ex. A ¶ 99.

Based on these and other such allegations, Gonzalez brought claims against Comenity Capital under the California Identity Theft Act ("CITA"), California's Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), the California Penal Code, and California's Unfair Competition Law ("UCL"). Id., Ex. A, pp. 10-15. The CITA claim is brought individually, while the claims under the Rosenthal Act, Penal Code and UCL are brought individually and on a class basis. Id. Comenity Capital removed the action to this Court based on diversity jurisdiction on March 14, 2019, see Doc. No. 1, and later filed the instant motion to compel arbitration. See Doc. No. 20. The Court denied Gonzalez's motion to remand in an Order dated October 21, 2019, Doc. No. 39, and now addresses Comenity Capital's motion to compel arbitration.

## **DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Comenity Capital argues that the Court is required under the Federal Arbitration Act ("FAA") to send this action to arbitration in its entirety because the agreements governing the Accounts (the "Credit Card Agreements" or, individually, the "Credit Card Agreement") include valid and enforceable arbitration provisions (the "Arbitration Provisions" or, individually, the "Arbitration Provision") that encompass all of Gonzalez's claims and bars her from arbitrating any

of the claims at issue on a class basis. Doc. No. 20, Part III.A. Comenity Capital also seeks a stay of this action pending arbitration of Gonzalez's claims. Id., Part III.C.

According to Comenity Capital, the "totality of the evidence" shows that Gonzalez entered into the Credit Card Agreements – and manifested assent to the Arbitration Provisions – because she opened, used and managed the Accounts; was provided with the Credit Card Agreements online and by mail; and did not opt out of the Arbitration Provisions. Id., Part III.A.3.

In support of this argument, Comenity Capital filed, *inter alia*, a declaration (the "Comenity Capital Declaration") supported by business records and executed by a company paralegal with knowledge of Comenity Capital's[1] records and record-keeping practices, Doc. No. 20-1 ¶ 3, that shows the following:[2]

- The Accounts were opened through online applications containing Gonzalez's name, home address, date of birth, social security number and phone number, Doc. No. 20-1, ¶¶ 6-8, 27-29;
- The Credit Card Agreements were displayed on-screen at the time the online applications for the Accounts were submitted, id. ¶¶ 7, 28;
- Comenity Capital mailed numerous items relating to the Accounts to Gonzalez's home address after the applications for the Accounts had been submitted online – including the Credit Card Agreements, billing statements and letters – and none of these items were returned to Comenity Capital as undeliverable, id. ¶¶ 9-10, 26, 30-31, 37, 40;
- The Accounts were used to make multiple purchases that posted in 2016 and 2017 and were shipped to Gonzalez's home address, id. ¶¶ 13, 14, 20, 34;

---

[1] Two entities were apparently involved in approving, issuing and servicing the Account: Comenity Capital (the named Defendant in this action) and Comenity Servicing LLC, which performs "account-related functions" – like issuing billing statements and collecting amounts due – for Comenity Capital. The Court refers to both entities as "Comenity Capital" in summarizing the contents of the Comenity Capital Declaration, but elsewhere in this Order, the term "Comenity Capital" refers solely to Defendant Comenity Capital, unless otherwise noted.

[2] Gonzalez raised evidentiary objections to paragraphs 6, 14, 15, 17, 18, 20, 23, 24, 27, 34, 35, 38, 39 and 41 of the Comenity Capital Declaration, wherein Comenity Capital states that Gonzalez herself took certain action with respect to the Account. Doc. No. 28. The Court does not rely on such portions of the Comenity Capital Declaration in deciding this motion and Gonzalez's objections are therefore overruled as moot. See Lavin v. United Techs. Corp., 2014 WL 3547237, at *2 n.2 (C.D. Cal. July 17, 2014).

3

- Online bill pay accounts were setup for the Accounts using Gonzalez's email address, id. ¶ 15, 39;
- The online bill pay accounts for the Accounts were accessed on numerous occasions, id. ¶¶ 18, 39;
- Numerous telephone calls were placed to Comenity Capital from the phone number in the online applications for the Accounts, id. ¶¶ 22-23, 25, 38; and
- Various payments and attempts to make payment were made with respect to the Accounts. Id. ¶¶ 16, 23-24, 38.

The Comenity Capital Declaration also states:

During a phone call with Comenity Servicing on June 28, 2017, Ms. Gonzalez stated that her kids like some of the items, but the Overstock people told her that she couldn't keep some items unless she paid for all of them.

Doc. No. 20-1 at 4:9-12.

Finally, the Comenity Capital Declaration attaches authenticated copies of the Credit Card Agreements, as sent to Gonzalez's home address and as displayed on-screen at the time the online applications for the Accounts were submitted. The Arbitration Provisions in the Credit Card Agreements contain, *inter alia*, the following paragraphs:

**C. Arbitration provision.**
**READ THIS ARBITRATION PROVISION CAREFULLY. IF YOU DO NOT REJECT THIS ARBITRATION PROVISION IN ACCORDANCE WITH PARAGRAPH C.1. BELOW, IT WILL BE PART OF THIS AGREEMENT AND WILL HAVE A SUBSTANTIAL IMPACT ON THE WAY YOU OR WE WILL RESOLVE ANY CLAIM WHICH YOU OR WE HAVE AGAINST EACH OTHER NOW OR IN THE FUTURE.**

**2. Parties Subject to Arbitration:** Solely as used in this Arbitration Provision (and elsewhere in this Agreement), the terms 'we,' 'us,' and 'our' mean (a) Comenity Capital Bank, any parent, subsidiary or affiliate of the Bank and the employees, officers and directors of such companies (the 'Bank Parties'); and (b) any other person or company that provides any services in connection with this Agreement if you assert a Claim against such other person or company at the same time you assert a Claim against any Bank Party.

**3. Covered Claims:** 'Claim' means any claim, dispute or controversy between you and us that in any way arises from or relates to this Agreement, the

Account, the issuance of any Card, any rewards program, any prior agreement or account. 'Claim' includes disputes arising from actions or omissions prior to the date any Card was issued to you, including the advertising related to, application for or approval of the Account. 'Claim' has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief . . . .

**4. Starting an Arbitration:** Arbitration may be elected by any party with respect to any Claim, even if that party has already initiated a lawsuit with respect to a different Claim. Arbitration is started by giving a written demand for arbitration to the other party. . . .

**7. Prohibition Against Certain Proceedings: IF YOU OR WE ELECT TO ARBITRATE A CLAIM: (1) NEITHER YOU NOR WE MAY PARTICIPATE IN A CLASS ACTION IN COURT OR IN CLASS-WIDE ARBITRATION, EITHER AS A PLAINTIFF, DEFENDANT OR CLASS MEMBER; (2) NEITHER YOUR NOR WE MAY ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; (3) CLAIMS BROUGHT BY OR AGAINST YOU MAY NOT BE JOINED OR CONSOLIDATED WITH CLAIMS BROUGHT BY OR AGAINST ANY OTHER PERSON; AND (4) THE ARBITRATOR SHALL HAVE NO POWER OR AUTHORITY TO CONDUCT A CLASS-WIDE ARBITRATION, PRIVATE ATTORNEY GENERAL ARBITRATION OR MULTIPLE-PARTY ARBITRATION.**

Doc. No. 22-1 ¶ 9, Ex. B & ¶ 31, Ex. H (Section I.C.) (emphasis original).

Further, the first section of the Credit Card Agreements contains the following provision, calling attention to the Arbitration Provisions:

**Section I of this Agreement also includes a Jury Trial Waiver and an Arbitration Provision in the event of a dispute.**
- **You have a right to reject this Arbitration Provision.**
- **If you do not reject this Arbitration Provision, it will be part of this Agreement and will:**
  - **Eliminate your right to a trial by jury; and**
  - **Substantially affect your rights, including your right to bring, join in or participate in class proceedings.**

Doc. No. 20-1 ¶ 9, Ex. B & ¶ 31, Ex. H (first page).

The section in the Arbitration Provisions addressing the right to reject the Arbitration Provisions reads as follows:

**1. Your Right to Reject: If you don't want this Arbitration Provision (and any prior arbitration agreement between you and us ("Prior Arbitration Agreement")) to apply, you may reject it by mailing us a written rejection notice which gives the name of each Cardholder and contains a statement that you (both of you, if more than one) reject the Arbitration Provision of this Agreement. The rejection notice must be sent to us at Comenity Capital Bank, PO Box 182422, Columbus, Ohio 43218-2422. A rejection notice is only effective if it is signed by you (all of you, if more than one) and if we receive it within thirty (30) calendar days after the date we first provide you with a credit card agreement or written notice providing you a right to reject this Arbitration Provision. Your rejection of this Arbitration Provision will not affect any other provision of this Agreement or your ability to obtain credit**.

Doc. No. 20-1 ¶ 9, Ex. B & ¶ 31, Ex. H (Section I.C.1.) (emphasis original). According to the Comenity Capital Declaration, Gonzalez never provided written notice rejecting either Arbitration Provision. Doc. No. 20-1 ¶¶ 11, 32.

In the alternative to an order compelling arbitration and staying this action, Comenity Capital seeks a summary trial on the question of whether the Arbitration Provisions apply here. See Doc. No. 20 n.19.

*Gonzalez's Opposition*

Gonzalez contends that the Court cannot send this action to arbitration – or undertake a summary determination as to the applicability of the Arbitration Provisions – because Comenity Capital has failed to make a prima facie showing that she entered into the Credit Card Agreements. Doc. No. 25, Part 3.E. Specifically, Gonzalez argues that the facts set forth in support of Comenity Capital's motion to remand "show[] only" that the Accounts were opened, and do not show "*who* opened the accounts." Id. at 14:13-14 (emphasis original). Further, Gonzalez argues that Comenity Capital has failed to establish that she manifested agreement to the terms of the Arbitration Provisions through conduct, which, according to Gonzalez, requires showing that she "*received* an arbitration agreement" and "was *aware* of a contractual relationship with [Comenity Capital]." Id. at 16:17-22 (emphasis original).

In the declaration supporting her opposition (the "Gonzalez Declaration"),[3] Gonzalez states

---
[3] Comenity Capital raised evidentiary objections to paragraphs 2, 3, 4, 5, 12-13, 20-22, 24-25 and 27-32 of the Gonzalez Declaration as well as Exhibits A and B thereto. Doc. No. 30-2. Comenity Capital also objects to certain statements in Gonzalez's opposition to the motion to compel arbitration. Id. The Court does not rely on any of the

6

that she did not "fill out any online account application or any kind of application for an Overstock.com credit card account or a Blair credit card account"; that she "never saw any terms and conditions of any Overstock.com or Blair credit card agreement on any computer screen"; and that she "did not open or use an Overstock.com credit card account or a Blair credit card account." Doc. No. 26 ¶¶ 7-9. She further states that she "did not sign up for online account management for an Overstock credit card account or Blair credit card account, or schedule or make payments"; that she "never saw any Overstock.com Credit Card Account Agreement or any Blair Credit Card Account Agreement before [Comenity Capital] filed this Motion"; that she "never saw any account statements for any Overstock.com credit card account or Blair credit card account until after [she] learned that the fraudulent account[s] had been opened in [her] name"; and that "[i]f [she] had seen any mail addressed to [her] from 'Comenity Capital Bank,' 'Blair' or 'Overstock' before [she] knew that [] fraudulent accounts had been opened in [her] name, [she] probably would have considered it junk mail and thrown it away without opening it or paying attention to it, because [she] did not have any account with those companies." Id. ¶¶ 11, 12, 13, 17. In addition, Gonzalez suggests her brother may have intercepted mail from Comenity Capital because he "knew [her] work schedule in 2016 and 2017" and would "come over to visit … on a regular basis." Id. ¶¶ 24-25, 27, 30.

In addition, Gonzalez has provided a transcript of the June 28, 2017 telephone call cited by Comenity Capital in connection with the Overstock.com Account, see Doc. No. 20-1 at 4:9-12, which reads in pertinent part as follows:

> Comenity Rep. #3: Okay, thank you. I do appreciate that. So what I understand, um, you have some accounts that you did not open, is that right?
>
> Ms. Gonzalez: That's right, I didn't. I mean, some of these places I never even heard of, I don't know what all this is, but I know that there's several places that was open. [] And I've told people before when they called me, I didn't order anything, I didn't open up this account, matter of fact, I even tried to save the Overstock account. [] And I told them, you know, 'cuz my kids like things off of there, there's items on there that they like, but I wasn't able to order anything off of there because they wanted me to pay what else the other people ordered and I told'em I wasn't gonna do that. Yeah ….

---

content at issue in deciding this motion and Comenity Capital's objections are therefore overruled as moot. See Lavin, 2014 WL 3547237 at *2 n.2.

7

> Comenity Rep. #3: Okay, and then the last one I found is the Overstock, let me-- so you didn't open that one, either?
>
> Ms. Gonzalez: No, I didn't open that one, but there are items on there that uh I, you know, that my kids wanted, but like I said, when I talked to the Overstock they said that you guys wouldn't allow me to keep it unless I paid off for the other things.

Doc. No. 27-2, Ex. B, pp. 2-3.

Gonzalez does not address Comenity Capital's contention that the claims in this case fall within the scope of the Arbitration Provisions or Comenity Capital's contention that the Arbitration Provision requires her to arbitrate her claims on an individual – as opposed to class – basis.

*Legal Standard*

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see Circuit City Stores v. Adams, 279 F.3d 889, 892 (9th Cir. 2002). Further, the FAA allows "a party aggrieved by the alleged … refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4; see Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

The FAA "leaves no place for the exercise of discretion by a district court" in deciding a motion to compel arbitration. Chiron, 207 F.3d at 1130 (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)) (internal quotation marks omitted). "The court's role under the [FAA] is [] limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron, 207 F.3d at 1130 (citing, *inter alia*, 9 U.S.C. § 4 and Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719–20 (9th Cir.1999)). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." Chiron, 207 F.3d at 1130; see Lifescan, Inc. v. Premier Diabetic Servs., 363 F.3d 1010, 1012 (9th Cir. 2004).

"Issues regarding the *validity or enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, but challenges to the *existence* of a contract as a whole must be

determined by the court prior to ordering arbitration." Sanford v. Memberworks, Inc., 483 F.3d 956, 962 & n.8 (9th Cir. 2007) (citation omitted) (emphasis original). In other words, it is the role of the court to determine whether an arbitration agreement was formed. See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1140-41 (9th Cir.1991).

On a motion to compel arbitration under the FAA, courts apply a standard similar to the summary judgment standard applied under Rule 56 of the Federal Rules of Civil Procedure. See Alvarez v. T-Mobile USA, Inc., 2011 WL 6702424, *3 (E.D. Cal. Dec. 21, 2011) (citing Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004)); Perez v. Maid Brigade, Inc., 2007 WL 2990368, *3 n.4 (N.D. Cal. Oct. 11, 2007); Ferguson v. Countrywide Credit Indus., 2001 WL 867103, n.1 (C.D. Cal. 2001), aff'd, 298 F.3d 778, 782 (9th Cir. 2002).[4] A party seeking to compel arbitration under the FAA "must make a prima facie showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" Blau v. AT & T Mobility, 2012 WL 10546, *3 (N.D. Cal. Jan. 3, 2012) (quoting Hines, 380 F. App'x at 24 (internal quotation marks omitted)); see also, Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 129-30 (2d Cir.1997). Courts construe "all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." Tanis v. Sw. Airlines, Co., 2019 WL 1111240, *1–2 (S.D. Cal. Mar. 11, 2019) (quoting Chavez v. Bank of Am., 2011 WL 4712204, *3 (N.D. Cal. Oct. 7, 2011) (internal quotation marks omitted). "If the court is 'satisfied that the making of the agreement for arbitration … is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.'" Crook v. Wyndham Vacation Ownership, Inc., 2015 WL 4452111, *2 (N.D. Cal. July 20, 2015) (quoting 9 U.S.C. § 4). If,

---

[4] See also, Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) ("In the context of motions to compel arbitration ... the court applies a standard similar to that applicable for a motion for summary judgment." (quoting Bensadoun v. Jobe–Riat, 316 F.3d 171, 175 (2d Cir.2003) (internal quotation marks omitted)); Aliron International, Inc. v. Cherokee Nation Industries, Inc., 531 F.3d 863, 865 (D.C. Cir. 2008) ("The district court properly examined [] motion to compel arbitration under the summary judgment standard of Federal Rule of Civil Procedure 56(c), as if it were a request for summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate."); Kaneff v. Delaware Title Loans, Inc., 587 F.3d 616, 620 (3d Cir. 2009) ("A district court decides a motion to compel arbitration under the same standard it applies to a motion for summary judgment.").

however, "there is a genuine issue of material fact as to whether the parties formed an agreement to arbitrate, a court must first resolve that factual dispute before it can, as a matter of law, compel the parties to submit their dispute to arbitration." Tanis, 2019 WL 1111240 at *2 (citing Three Valleys, 925 F.2d at 1140–41); see Grabowski v. Robinson, 817 F. Supp. 2d 1159, 1168 (S.D. Cal. 2011).

**ANALYSIS**

The Court starts the analysis below by determining whether Gonzalez's claims fall within the scope of the Arbitration Provisions in the Credit Card Agreements and then addresses the question of whether the Arbitration Provisions apply.

**I.      Whether the Arbitration Provisions Encompass the Dispute at Issue**

Assuming "a valid arbitration agreement exists," a court must decide, under the second *Chiron* prong, "whether the agreement encompasses the dispute at issue." Chiron, 207 F.3d at 1130; see Galvan v. Michael Kors USA Holdings, Inc., 2017 WL 253985, *4 (C.D. Cal. Jan. 19, 2017). The Court undertakes this analysis at the threshold, in this instance, to determine whether it is necessary to address the other element of the *Chiron* analysis – contract formation.

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration," Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 91 (2000), and the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

By its terms, the Arbitration Provisions in the Credit Card Agreements apply to "any claim, dispute or controversy … that in any way arises from or relates to" the Credit Card Agreements or the Accounts, including "disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity …." Doc. No. 22-1 ¶ 9, Ex. B & ¶ 31, Ex. H (Section I.C.) (emphasis original).

Comenity Capital argues that the claims in this action "plainly fall within the scope of the Arbitration Provisions" because they "are based on alleged servicing calls and letters relating to the Account." Doc. No. 20 at 25:5-12. Gonzalez does not address the issue of scope at all.

10

The claims at issue here are based exclusively on Comenity Capital's alleged failure to comply with applicable law in addressing Gonzalez's claim that she did not open the Accounts. Gonzalez alleges that Comenity Capital failed to inform her that her identity theft claim as to the Accounts must be submitted in writing; that Comenity Capital has failed to produce certain documents relating to the Accounts; that Comenity Capital improperly threatened her with legal action to collect debts on the Accounts; and that Comenity Capital failed to diligently investigate her notification of identity theft as to the Accounts. Thus, the Court finds that the claims at issue in this action "arise[] from or relate[] to" the Accounts and are therefore subject to arbitration if the Arbitration Provisions apply. See Galvan, 2017 WL 253985 at *4 (finding that the "plain language" of the arbitration agreement encompassed the claims at issue); Hoekman v. Tamko Bldg. Prod., Inc., 2015 WL 9591471, *7 (E.D. Cal. Aug. 26, 2015) (finding that "all aspects" of the case were encompassed by "the broad language of the arbitration agreement").

*Whether the Arbitration Provisions Permit Arbitration of Claims on a Classwide Basis*

Comenity Capital further argues that, while the claims in this case are properly subject to arbitration, they can only be arbitrated on an individual – non-class – basis. Doc. No. 20, Part III.B. The Court addresses this argument here since it affects the scope of arbitration.

Although the Court is not aware of a published Ninth Circuit decision on whether it is for the court or the arbitrator to decide whether class claims are arbitrable, other circuit courts have held that the availability of class arbitration is a "gateway matter" for the court to decide in the absence of clear and unmistakable delegation to the arbitrator. See Opalinski v. Robert Half Int'l Inc., 761 F.3d 326, 331-32, 335-36 (3d Cir. 2014); Reed Elsevier, Inc. v. Crockett, 734 F.3d 594, 599 (6th Cir. 2013). Moreover, the Ninth Circuit held in an unpublished decision that the district court did not err in striking the plaintiff's class claims prior to ordering arbitration because "[i]ssues that contracting parties would likely have expected a court to have decided are considered gateway question of arbitrability for courts, and not arbitrators, to decide." Eshagh v. Terminix Int'l Co., 588 Fed. App'x. 703, 704 (9th Cir.2014) (citing Momot v. Mastro, 652 F.3d 982, 987 (9th Cir. 2011)). And the Arbitration Provisions expressly state that disputes as to the "Class Action Waiver" are "for a court and not an arbitrator to decide." Doc. No. 20-1, Exs. B &

H (Section I.C.3). The Court will therefore decide whether Gonzalez may arbitrate claims on a classwide basis, assuming the Arbitration Provisions apply. See Chico v. Hilton Worldwide, Inc., 2014 WL 5088240, *11 (C.D. Cal. Oct. 7, 2014) (holding that "because the parties did not clearly and unmistakably provide otherwise, the Court, rather than the arbitrator, must decide whether the [arbitration agreements] authorize class arbitration").

The Arbitration Provision states in pertinent part:

**IF YOU OR WE ELECT TO ARBITRATE A CLAIM: (1) NEITHER YOU NOR WE MAY PARTICIPATE IN A CLASS ACTION IN COURT OR IN CLASS-WIDE ARBITRATION, EITHER AS A PLAINTIFF, DEFENDANT OR CLASS MEMBER; (2) NEITHER YOUR NOR WE MAY ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; (3) CLAIMS BROUGHT BY OR AGAINST YOU MAY NOT BE JOINED OR CONSOLIDATED WITH CLAIMS BROUGHT BY OR AGAINST ANY OTHER PERSON; AND (4) THE ARBITRATOR SHALL HAVE NO POWER OR AUTHORITY TO CONDUCT A CLASS-WIDE ARBITRATION, PRIVATE ATTORNEY GENERAL ARBITRATION OR MULTIPLE-PARTY ARBITRATION.**

Doc. No. 20-1, Exs. B & H (Section I.C.6.) (emphasis original).

It is settled law that "[c]lass action waivers contained within arbitration agreements are valid and enforceable," Hoekman, 2015 WL 9591471 at *7 (citing AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740 (2011)), and that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 567 (2013) (quoting Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 684 (2010)); see also, Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 232-33 (2013). Furthermore, Gonzalez has made no attempt to show that the waiver set forth in the Arbitration Provisions should not have effect as written. Accordingly, the Court finds that the Arbitration Provisions do not permit arbitration of claims on a classwide basis, and that Gonazalez may only arbitrate her claims on an individual basis if it is determined that the Arbitration Provisions apply. See Morvant v. P.F. Chang's China Bistro, Inc., 870 F. Supp. 2d 831, 842 (N.D. Cal. 2012) (finding that "the FAA requires not just compelling arbitration, but compelling arbitration *on an individual basis* in the absence of a clear agreement to proceed on a class basis" (citing Concepcion, 131 S.Ct. at 1748) (emphasis original)).

## II. **Whether Agreements to Arbitrate Exist**

Having found that the claims in this case are within the scope of the Arbitration Provisions (and that the Arbitration Provisions bar the arbitration of claims on a classwide basis), it is necessary to turn to the first prong of the *Chiron* analysis, addressing the question of whether an arbitration agreement exists. See Sanford, 483 F.3d at 962 & n.8 (stating that "challenges to the *existence* of a contract as a whole must be determined by the court prior to ordering arbitration" (emphasis added)); Chiron, 207 F.3d at 1130.

In determining whether an arbitration agreement exists, "federal courts [] apply ordinary state-law principles that govern the formation of contracts." Pokorny v. Quixtar, Inc., 601 F.3d 987, 994 (9th Cir. 2010) (citation and some internal punctuation omitted). Comenity Capital contends that the Court should apply Utah law to this analysis because there are choice of law provisions calling for Utah law in the Credit Card Agreements. Doc. No. 20 at 17:27-18:7. The Court, however, "cannot assume the parties have made such an election." See Aspect Grp. v. Movietickets.com, Inc., 2006 WL 5894608, at *6 (C.D. Cal. Jan. 24, 2006) (citing Restatement (Second) of Conflict of Laws § 188(1) (1988)). Where, as here, "the very question … is whether a contract exist[s] at all," courts "apply the local law of the state with the most significant relationship to the transaction and the parties." Id., 2006 WL 5894608 at *6 (citation and internal quotation marks omitted).

Gonzalez is a resident of California and was in California at the time the Account was opened. Doc. No. 26 ¶ 6. Comenity Capital asserts through a sworn declaration that Gonzalez provided a California address in her online application for the Credit Card, Doc. No. 20-1 ¶¶ 8, 29, and that Comenity Capital sent materials relating to the Accounts – including the Credit Card Agreements – to Gonzalez at that California address. Id. ¶ 9. This action was filed in California state court, based entirely on California statutes. Doc. No. 1, Ex. A. And while Comenity Capital states that it is a "Utah Industrial Bank," id. ¶ 4, the payment address on the billing statements for the Accounts is in Texas – not Utah. Doc. No. 20-1, Exs. D & J. Accordingly, the Court finds that California has the "the most significant relationship" – and a far greater relationship than Utah

13

– to the transaction and the parties in this case and thus applies California law to the question of contract formation. See Aspect Grp., 2006 WL 5894608 at *6.

Under California law, "the party seeking to compel arbitration[] has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence," Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014) (citing Rosenthal v. Great W. Fin. Sec. Corp., 14 Cal. 4th 394, 413 (1996)), and mutual assent is a required element of contract formation. Hoekman, 2015 WL 9591471 at *3 (citing Cal. Civ.Code § 1550).[5] "Mutual assent may be manifested by written or spoken words, or by conduct," Knutson, 771 F.3d at 565 (quoting Binder v. Aetna Life Ins. Co., 75 Cal. App. 4th 832, 850 (1999) (internal quotation marks omitted)), and acceptance of contract terms may be implied through action or inaction. Id. (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593–95 (1991)). Further, "an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains." Id. (quoting Windsor Mills, Inc. v. Collins & Aikman Corp., 25 Cal. App. 3d 987, 991 (1972) (internal quotation marks omitted)). "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." Id. (citing Meyer v. Benko, 55 Cal. App. 3d 937, 942–43 (1976)).

Comenity Capital contends that Gonzalez entered to the Credit Card Agreements and is bound by the Arbitration Provisions because she opened the Accounts, was shown the Credit Card Agreements online at the time she submitted her applications, received the Credit Card Agreements by mail at her home address, and used and managed the Accounts without opting out of the Arbitration Provisions. Specifically, the Comenity Capital Declaration[6] sets forth evidence showing that: the personal information in the online applications used to open the Accounts

---

[5] Under California law, the essential elements of a contract are: "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration." Olivas v. Hertz Corp., 2018 WL 1306422, *5 (S.D. Cal. Mar. 12, 2018) (citation omitted). The only element in dispute here is consent.

[6] "While the Court may not review the merits of the underlying case '[i]n deciding a motion to compel arbitration, [it] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party.'" Olivas, 2018 WL 1306422 at *7 (quoting Macias v. Excel Bldg. Servs. LLC, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (some internal quotation marks omitted)).

14

(including the address, phone number and social security number) undisputedly belongs to Gonzalez, Doc. No. 20-1 ¶¶ 8, 29; online accounts for managing the Accounts were established using Gonzalez's actual email address, id. ¶¶ 15, 39; there were multiple attempts to make payments on the Accounts, id. ¶¶ 16, 23-24, 36, 38; Comenity Capital received calls from Gonzalez and reached Gonzalez at the phone number provided in the applications for the Accounts, id. ¶¶ 14, 22-23, 38, 41; and a number of documents relating to the Accounts – including the Credit Card Agreements, as well as multiple letters and billing statements – were mailed to Gonzalez's undisputed home address without being returned to Comenity Capital as undeliverable. Id. ¶¶ 21, 26, 37, 40. Further, Comenity Capital sets forth evidence showing that the Arbitration Provisions were featured prominently in the Credit Card Agreements (as displayed online and sent to Gonzalez's home address) and that Gonzalez did not opt of the Arbitration Provisions. Id., ¶¶ 11, 32, Exs. B & H (Section I.C.).

Gonzalez, for her part, unequivocally denies opening, using, managing or attempting to make payment on the Accounts and contends that Comenity Capital "fails to meet its burden of making even a prima facie showing" that it was Gonzalez – "and not someone else" – who opened, used and managed the Accounts. Doc. No. 25 at 6:2-6. Specifically, Gonzalez states under oath that she "did not open or use an Overstock.com credit card account or a Blair credit card account," Doc. No. 26 ¶ 9, and that she "never saw any Overstock.com Credit Card Account Agreement or any Blair Credit Card Account Agreement" before Comenity Capital filed the instant motion to compel arbitration. Id. ¶ 11. In addition, Gonzalez denies receiving communications and merchandise relating to the Accounts, and states that her brother may have intercepted mail because he "knew [her] work schedule in 2016 and 2017" and would "come over to visit … on a regular basis." Id. ¶¶ 27-30.

On this record, Gonzalez's contention that Comenity Capital failed to make a prima facie case that an arbitration agreement was formed is unavailing. Comenity Capital shows that all of the personal information in the applications for the Accounts (including the phone number, address and social security number) undisputedly belongs to Gonzalez. Comenity Capital further shows that the Credit Card Agreements were displayed online at the time the Accounts were

opened and sent to Gonzalez's home address. See Paxton v. Macy's W. Stores, Inc., 2018 WL 4297763, *7 (E.D. Cal. Sept. 7, 2018) ("An arbitration clause within a contract may be binding on a party even if the party never actually read the clause.") (quoting Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 236 (2012)). Comenity Capital also shows that the Accounts were managed through Gonzalez's phone number and online accounts using Gonzalez's email address. And Comenity Capital sets forth evidence showing that Gonzalez did not opt out of the Arbitration Provision as to either Account. See Zarandi v. All. Data Sys. Corp., 2011 WL 1827228, *1–2 (C.D. Cal. May 9, 2011) (C.D. Cal. May 9, 2011) (finding failure to opt out of arbitration provision constituted consent to terms of the arbitration provision) (citation omitted). The Court therefore finds that Comenity Capital has set forth a prima facie case that Gonzalez entered into the Credit Card Agreements and assented to the terms of the Arbitration Provisions.

The Court also finds, however, that Gonzalez's unequivocal, sworn statements that she did not open, use, manage, make payments on, or know about the Accounts puts the formation of the Credit Card Agreement in issue. Comenity Capital argues that, in some contexts, courts have found that bare denials without corroborating evidence do not create disputed issues of fact.[7] The ultimate inquiry, however, is whether the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Gonzalez's "sworn statements," which must be "taken as true" at this stage of these proceedings, are "direct evidence of the central fact in dispute" on this motion. Id.; see also, In McLaughlin v. Liu, 849 F.2d 1205, 1207–08 (9th Cir. 1988) (citing "the long-standing rule that credibility may not be resolved by summary judgment"). Viewed in the light most favorable to Gonzalez, the evidence set forth by Comenity Capital convincingly shows that Gonzalez's information was used in opening and managing the Accounts – and that a great deal of communications and even merchandise relating to the Accounts were delivered to Gonzalez's

---

[7] See, e.g., Grabowski, 817 F. Supp. 2d at 1168 ("it is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends") (quoting Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995).

16

1 home address – but still allows for a reasonable inference based on Gonzalez's sworn statements
2 that Gonzalez herself was not involved. Even the June 28, 2017 telephone transcript – which
3 Comenity Capital points to as proof that Gonzalez took delivery of merchandise purchased
4 through the Overstock.com Account, Doc. No. 20 at 11:17-19 – could fairly be read to show only
5 that Gonzalez attempted to adapt the Overstock.com account for her own use after learning of its
6 existence because her children liked certain products on the Overstock.com site. Cf. Fresno
7 Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2015) (summary
8 judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from
9 the undisputed facts"). However a trier of fact may ultimately weigh the June 28, 2017 transcript
10 against other facts in deciding whether Comenity Capital has shown contract formation in
11 connection with the Credit Card Agreements, it is not the black-and-white admission as to
12 knowledge and use of the Overstock.com Account that Comenity Capital makes it out to be, see
13 Doc. No. 27-2, Ex. B, pp. 2-3, and it does not negate Gonzalez's claim (which she repeats several
14 times on the June 28, 2017 call itself) that she did not open, manage or use the Accounts at issue.
15 In short, Gonzalez's sworn statements as to the Accounts raise questions of fact as to whether the
16 Arbitration Provisions apply that cannot be decided on this motion and that must be resolved
17 before the Court can compel the parties to submit their dispute to arbitration. See Tanis, 2019 WL
18 1111240 at *2; cf. Garbacz v. A.T. Kearny, Inc., 2006 WL 870690, *3 (N.D. Cal. Apr. 4, 2006).

### III. CONCLUSION

For the reasons set forth above, the Court finds that, assuming the Arbitration Provisions apply, all of the claims in this case are within the scope of the Arbitration Provisions and can only be arbitrated on an individual – non-class – basis. The Court further finds, however, that Gonzalez's sworn statement that she did not open the Accounts puts the formation of the Credit Card Agreements in issue. The Court therefore DENIES Comenity Capital's motion to compel arbitration without prejudice and finds that a summary determination is required on the limited question of whether Gonzalez entered into the Credit Card Agreements. Within 14 days of the date of service of this Order, the parties shall meet and confer as to the scope of discovery

necessary to address that question and submit a joint proposal to Magistrate Judge Grosjean for further proceedings consistent with this Order.

**<u>ORDER</u>**

Accordingly, IT IS HEREBY ORDERED that:

1. Comenity Capital's motion to compel arbitration (Doc. No. 20) is DENIED without prejudice; and
2. Within 14 days of the date of service of this Order, the parties shall meet and confer as to the scope of necessary discovery and submit a joint proposal to Magistrate Judge Grosjean for further proceedings consistent with this Order.

IT IS SO ORDERED.

Dated:   October 30, 2019            _____
                                            SENIOR DISTRICT JUDGE